UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| JOHNNY DAVIDSON, et al., | ) |
| | ) |
| Plaintiffs, | )  Civil Action No. 7: 06-129-DCR |
| | ) |
| V. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| DEPARTMENT OF HEALTH AND | )  **MEMORANDUM OPINION** |
| HUMAN SERVICES, et al., | )  **AND ORDER** |
| | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This litigation arises out of the birth of Emma Davidson on October 14, 2003, at the Whitesburg Appalachian Regional Hospital in Lechter County, Kentucky. At the time of her birth, Emma was diagnosed with severe ischemic hypoxic encephalopathy associated with microcephaly, spastic quadriparesis, profound developmental delay and a seizure disorder. [Record No. 147, Ex. 2] The Plaintiffs claim that Emma's injuries are the result of the negligent acts of Dr. Elizabeth Case, Mountain Comprehensive Health Corporation (a community health center of the United States Department of Health and Human Services), Appalachian Regional Healthcare, Inc. ("ARH"), and its employees. They filed their administrative claim against the United States on January 25, 2005, and filed their Complaint in this Court on February 22, 2006, seeking in excess of $17,000,000 in compensatory and punitive damages.

On July 19, 2007, the Court denied the Plaintiffs' motion to increase the amount of damages claimed against the United States for Emma's future care, physical pain, and mental

anguish. [Record No. 175] The Court found that, under the Federal Tort Claims Acts ("FTCA") and the Sixth Circuit's decision in *Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990), the damages were limited to the amount stated in their administrative claim (namely, $11,000,000.00) for future care.

Subsequently, on August 31, 2007, Defendant ARH filed a motion to limit the amount of damages recoverable or provable against it to the same damages recoverable or provable against the United States. [Record No. 202] ARH claims that it is seeking clarification of the Court's Order denying the Plaintiffs' motion to increase damages because that Order did not specify whether the limitation was applicable to both defendants. ARH further contends that the limitation should apply to it because it would be inequitable to allow the Plaintiffs to recover a greater amount from ARH if the Court should find that the United States is more at fault.

In addition, the United States has filed Motion for Summary Judgment as to Plaintiffs Amy and Johnnie Davidson's claims for the loss of services of their daughter, Emma, as well as with respect to Johnnie Davidson's claims for the loss of consortium of his wife, Amy. [Record No. 199] Defendant ARH has joined in the United States' motion with respect to Amy and Johnnie Davidson's claims for the loss of services of Emma and has filed a separate motion for partial summary judgment on several of the Plaintiffs' state law claims. [Record Nos. 201, 203] The Plaintiffs have responded to all of the Defendants' motions and have conceded some issues while objecting to others. Finally, the Plaintiffs have also filed a motion for partial summary judgment on the issue of their comparative fault. [Record No. 198]

**I.     Motion to Limit Damages**

Under the FTCA, 28 U.S.C. § 2675(b), the amount of damages recoverable against the United States is limited to the amount claimed by the Plaintiffs in their administrative complaint. [*See* Record No. 175] The purpose of this limitation is to ensure that federal agencies charged with the responsibility of making decisions regarding whether to settle tort claims against the United States' government are given notice of the maximum potential liability. *Allgeier*, 909 F.2d at 878. However, "the statute does not prevent proof of damages in excess of the amount of the administrative claim, but only prevents assertion of a claim and judgment against the Government in excess of that amount." *Dickens v. United States*, 545 F.2d 886, 893 (5th Cir. 1977).

ARH contends that, because the Court has limited the amount of damages that can be asserted and recovered against the United States to the amounts claimed in the Plaintiffs' administrative complaint, it would be inequitable to allow the Plaintiffs to claim a greater amount against ARH. They further claim that they would suffer prejudice if the Plaintiffs are allowed to present evidence relating to the additional claims for damages, and that any such evidence would be inadmissible because it is not based on credible medical science. They admit that they have been unable to locate any support of their position. [*See* Record No. 202, p. 3]

In their motion to increase damages, the Plaintiffs requested leave to increase *only* those damages claimed against the United States. [See Record No. 139] Although this Court referred to the "Defendants" in its Memorandum Opinion and Order, it is clear that the limitations imposed by 28 U.S.C. § 2765(b) only apply to claims against the United States, and the Order only addressed the Plaintiffs' motion to increase the damages claimed against the United States.

Accordingly, inasmuch as ARH seeks clarification of the Court's Order, the decision to limit damages to those claimed in the administrative complaint was only applicable to the United States.

As ARH concedes in its motion, there is no legal support to impose the limitation provided in 28 U.S.C. § 2675(b) on the Plaintiffs' claims against ARH or any other private actors. At trial, the Plaintiffs are entitled to offer proof of damages in excess of the $11,000,000.00 claimed for future medical expenses in their administrative complaint. *See Dickens*, 545 F.2d at 893. However, they cannot recover any more than that amount from the United States. This limitation has no affect on the amount provable or recoverable against ARH.

Regarding ARH's claims of prejudice to it and the United States, the Court notes that this is a bench trial and that ARH's allegation that, by allowing proof in excess of the damages claimed in the administrative complaint, the "natural tendency will be to award higher damages against both parties," is without merit. As stated in the Plaintiffs' Complaint, this case will require an apportionment of fault (if any) between the Defendants. If the Court should find for the Plaintiffs on any of their claims for damages, it will assess a *percentage* against each liable party. There is no foundation for ARH's claim that the Court will assess a higher *amount* of damages against the United States. And because ARH has been aware of the increase in damages claimed since April 1, 2007, more than seven months before the case was set to go trial, the Court cannot find that ARH will be prejudiced by allowing the Plaintiffs to offer proof of these damages.[1]

---

[1] The Court notes that it did find that there was a potential for prejudice if it allowed the Plaintiffs to increase the amount of damages claimed against the United States. [*See* Record No. 175, n.1] However, the

Finally, with respect to ARH's contention that the medical evidence in support of the increased damages is not credible, ARH notes in its memorandum that such a claim should be addressed through a *Daubert* challenge. In fact, the United States has already filed a motion *in limine* to resolve this issue. Accordingly, the Court need not address the admissibility of the evidence in determining whether the limitation of damages claimed and recoverable against the United States applies to ARH. ARH's motion to limit the damages provable or recoverable against it to those recoverable against the United States will be denied.

## II. The Parties' Motions for Partial Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 983 (E.D.Ky. 1993). Once a moving party has met its burden of production, "'its opponent must do

---

prejudice to the United States is distinct from that to ARH because, as noted above, the purpose of the limitation on damages in the FTCA is to ensure that federal agencies charged with the responsibility of making decisions regarding whether to settle tort claims against the United States' government are given notice of the maximum potential liability. *See Allgeier*, 909 F.2d at 878. Again, this section of the FTCA has no applicability to private actors, such as ARH.

more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits to support its claims. *Celotex*, 477 U.S. at 324.

In reviewing a party's motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, and summary judgment is appropriate whenever that non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

### B.  United States' Motion for Partial Summary Judgment

The United States contends that it is entitled to summary judgment on Plaintiff Johnnie Davidson's claim for the loss of consortium of his wife and on Plaintiffs Johnnie and Amy Davidson's claims for the loss of services of their daughter, Emma. More specifically, the United States asserts that this Court lacks subject matter jurisdiction over the claim for loss of consortium because the Plaintiffs failed to include it in their administrative claim. The United States further claims that, although the Plaintiffs did pursue an action for the loss of services of

their daughter in their administrate claim, they have failed to provide any evidence in support of that claim.[2] In the alternative, the United States contends that, if the Court should find that summary judgment is not appropriate regarding the Davidson's claim for loss of services, that claim is limited to the amount stated in their administrative complaint, namely, $1,000,000.00 for each parent.

The Plaintiffs concede that dismissal for lack of subject matter jurisdiction is appropriate as to Johnnie Davidson's claim for loss of consortium of his wife and that Amy and Johnnie's claims against the United States for the loss of services of their daughter are limited to the amounts claimed in their administrative complaint. [Record No. 212, p. 1-2] Accordingly, the United States' motion will be granted as to those issues. However, the Plaintiffs contend that summary judgment on the loss of services claims is not appropriate because direct proof of specific pecuniary loss is not required on such claims.

Under Section 405.010 of the Kentucky Revised Statutes, the father and mother of a child under the age of eighteen can maintain an action for the loss of services or earnings of their child when the loss is caused by an injury wrongfully or negligently inflicted on the child. KRS § 405.010 (2007). Essentially, such a claim is for the impairment of the child's earning power

---

[2] Defendant ARH has joined in the United States' motion for summary judgment on the Davidsons' claims for loss of services of their daughter. ARH has not filed a separate memorandum in support and has relied entirely on the arguments asserted by the United States. Accordingly, the Court's decision on the merits of the United States' motion will also be applicable to ARH's motion for dismissal of the parents' claim for loss of services. [Record No. 201]

However, any limitation on the Plaintiffs' claims against the United States *will not* be applicable to the claims against ARH. As discussed above, 28 U.S.C. § 2675(b) does not apply to private actors, such as ARH, and the Plaintiffs' claims against ARH for the loss of services of their daughter will not be limited to the amount stated in their administrative complaint. *See* Section I, *supra*.

until the age of eighteen and the parents' loss of the child's household services as a minor resulting from the injury. [*See* Record No. 199, p. 8 (citing *Leonard v. St. Clare Med. Ctr., Inc.*, 2007 WL 625074, *3 (Ky. App. 2007) ("[T]he [Davidsons'] claims for loss of services are no more than claims for lost wages and/or the value of the loss of the labor of their minor child."))] If the parents fail to assert such a claim in an action on behalf of the child, their right to collect any potential earnings is waived and the full value of the lost earnings can be awarded to the child. *See Smith v. Geoghegan & Mathis*, 333 S.W.2d 254, 256 (Ky. 1960) (citing *Behemoth Coal Co. v. Helton*, 310 Ky. 810 (1949) ("KRS 405.010 declares that the father and mother of a minor child are equally entitled to his earnings . . . . However, the right of parents may be waived where they have notice of the minor's suit and participate in it without asserting an independent right to recovery.").

Earlier this year, the Kentucky Supreme Court squarely resolved the question whether a plaintiff in a personal injury case is required to present specific evidence of her earning power for the issue of permanent impairment of earning power to be submitted to the fact-finder. *See Reece v. Nationwide Mutual Insurance Co.,* 217 S.W.3d 226 (Ky. 2007). The court held that such specific evidence is not required and that "evidence of permanent injury alone is sufficient for an instruction on permanent impairment of earning power." *Id*. at 229. In reaching this conclusion, the Court analyzed a number of cases on this issue and expressly overruled the requirement that plaintiffs present "positive and satisfactory evidence." *Id*. The Court further noted that,

> [w]hile specific expert witness testimony on permanent impairment of earning power is helpful and often persuasive, *see Louisville Metro Hous. Auth. v. Burns*,

-8-

> 198 S.W.3d 147, 151 (Ky.App. 2005), it is not necessary to submit the issue of permanent impairment of earning power to the jury. *See Pickard Chrysler, Inc. v. Sizemore*, 918 S.W.2d 736, 739-40, 42 10 Ky. L. Summary 15 (Ky.App. 1995) (upholding award of damages for permanent impairment of earning power where there was no expert testimony on how plaintiff's earning power was affected and little evidence of past job history and earnings). The plaintiff need only show with reasonable probability that the injury sustained is permanent. *Rogers v. Sullivan*, 410 S.W.2d at 628. This Court recognizes that a permanent injury may not always result in permanent impairment of earning power. Like the *Chesapeake* [*& O. Ry. Co. v. Hay*, 261 Ky. 566 (1935),] Court, we believe jurors are capable of determining, from the evidence and their common knowledge and experience, whether there has been a permanent impairment, the extent of such impairment, and the value of such impairment.

*Id.* at 230-231.

Here, the United States contends that the Plaintiffs' claim under this statute must be dismissed because they have failed to offer "*any* evidence to support their claims of the loss of Emma's services or earnings." [Record No. 239, p. 1; see also Record No. 199] However, under the Kentucky Supreme Court's decision in *Reece*, the Plaintiffs are only required to prove a permanent injury. And because there is no question that a factual issue exists as to the extent and permanency of the injury to Emma in this case, the United States' motion for summary judgment on this claim must be denied.[3] However, as the Plaintiffs concede, they are only entitled to claim $1,000,000.00 each on this claim against the United States under 28 U.S.C. § 2675(b) and this Court's previous Order.[4] [*See* Record No. 175]

---

[3] Inasmuch as ARH joined in the United States' motion through its motion for dismissal of the parents' claims for loss of consortium [Record No. 201], ARH's motion will also be denied for the same reasons.

[4] The United States argues extensively about child labor laws, driving restrictions, and the fact that "the employment of a minor child in the labor force is so restrictive that such a damage claim has little or no value." [Record No. 199, p.9] However, the United States cannot show that Emma could not have procured *any* gainful employment as a minor, and thus summary judgment on this claim is not appropriate. Although the United States is correct that "Amy and Johnnie Davidson's claims amount to no more than speculation," the Court is certain that is capable of determining the amount of damages, if any, to be awarded under this

### C.     ARH's Motion for Partial Summary Judgment

Defendant ARH has also moved for partial summary judgment on several of the state law claims asserted in the Plaintiffs' complaint. In particular, ARH claims that it is entitled to judgment as a matter of law or dismissal on the Plaintiffs' allegations of the following: (1) ARH's allegedly negligent credentialing of Dr. Elizabeth Chase; (2) ARH's alleged negligence in failing to provide Dr. Elizabeth Chase with standard clinical Policies and Procedures pertaining to obstetrical care; (3) ARH's allegedly negligent selection and supervision of its staff; (4) the Plaintiffs' claim for the tort of outrage.

The Plaintiffs concede that summary judgment or dismissal is appropriate with respect to the first two claims listed above. Therefore, ARH's motion will be granted regarding the alleged negligent credentialing of Dr. Elizabeth Chase and the alleged negligence in failing to provide her with standard clinical Policies and Procedures pertaining to obstetrical care. However, the Plaintiffs state that they a question of fact remains as to the claims of negligent supervision and tort of outrage.

Under Kentucky law, "an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person."[5]  *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998).  This type of

---

claim under the principles articulated by the Kentucky Supreme Court in *Reece*. *See Reece*, 217 S.W.3d at 231 (holding that "we believe jurors are capable of determining, from the evidence and their common knowledge and experience, whether there has been a permanent impairment, the extent of such impairment, and the value of such impairment").

[5]      In *Oakley*, the court adopted the definition of the tort of negligent hiring or supervision provided in § 213 of the Restatement (Second) of Agency. *Oakley*, 964 S.W.2d at 442. That section provides as follows:

> A person conducting an activity through servants or other agents is subject to liability for

claims requires a claimant to prove two elements: (1) that the employer knew or should have known that employee was unfit for the job; and (2) that the placement or retention of the employee created a unreasonable risk of harm to a third person. *Id*. at 438; *see also Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000).

In the present case, ARH contends that the Plaintiffs have failed to put forth any evidence to support their claim of negligent hiring and supervision of Nurses Vicki Slone and Rhonda Johnson. ARH admits that a genuine issue of fact exists concerning the alleged negligence of the nurses under the doctrine of *respondeat superior*, but asserts that the Plaintiffs have failed to offer any evidentiary support for either element of their claim for negligent hiring.

In their response to ARH's motion, the Plaintiffs contend that Nurses Slone and Johnson violated ARH's policies and procedure concerning the administration of the drug Picotin and the notification of doctors if there is any sign of fetal distress. According to the Plaintiffs, "these breaches render the Hospital directly liable and are ample evidence of its failure to adequately supervise or train the offending nurses." [Record No. 213, p.1-2]

---

harm resulting from his conduct if he is negligent or reckless:

(a) in giving improper or ambiguous orders of in failing to make proper regulations; or

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958).

Although this Court agrees that a genuine issue of material exists as to the nurses' negligence under the doctrine of *respondeat superior*, there is no evidence in the record that demonstrates ARH had any reason to foresee that the employment and retention of either nurse created a risk of unreasonable harm to the Plaintiffs. To the contrary, the only evidence in the record before the Court is the testimony that nurse Johnson had over six years experience as an ob/gyn nurse, and over a year experience with labor and delivery. There is no dispute that nurse Johnson received fetal monitor strip training shortly after she began working for ARH in 2002. Similarly, nurse Slone worked as an operating room technician for 20 years and became a registered nurse in 2001. She has been on the ob/gyn floor at the Whitesburg hospital since April of 2002, and underwent a six month orientation at the time of her move, including training regarding fetal monitoring strips. [*See generally* Record Nos. 182, 209]

In responding to a motion for summary judgment, the non-moving party cannot just rely on bald assertions in their pleadings, but must come forward with probative evidence in support of its claim. *Celotex*, 477 U.S. at 324. Here, other than the alleged negligence at the time of Emma's delivery, the Plaintiffs have failed to come forward with any information in support of their claim for negligent hiring and supervision. Accordingly, they cannot satisfy either element of their claim because ARH could not have foreseen an unreasonable risk to Emma when the only alleged conduct occurred at the time of her delivery. In viewing the facts in the light most favorable to the Plaintiffs, the record is wholly devoid of any allegation that nurses Slone and Johnson were unfit for their jobs or that ARH knew or should have known that they were unfit for their jobs and posed an unreasonable risk of harm to the Davidsons. *See, e.g., Cornett v.*

*Byrd*, 2006 U.S. Dist. LEXIS 86476, at *31-32 (E.D. Ky. Nov. 28, 2006); *Pennington v. Dollar Tree Stores*, 104 F. Supp. 2d 710, 715 (E.D. Ky. 2000). Accordingly, summary judgment in favor of ARH on the Plaintiffs' claim of negligent hiring and supervision will be granted.

Next, ARH contends that it is entitled to summary judgment on the Plaintiffs' claims of outrageous conduct. To prevail on a claim for the tort of outrage, a plaintiff must prove the following elements: "(1) The wrongdoer's conduct must be intentional or reckless; (2) The conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) There must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) The emotional distress must be severe." *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984).

In the present case, the Plaintiffs assert several grounds in support of their claim for the tort of outrage. They contend that ARH, through its agents, disseminated privileged medical information concerning Amy Davidson's refusal of a cesarean section, failed to inform Any and Johnnie Davidson of the grim prognosis of their child at the time of birth, and failed to counsel them regarding what caused the harm to the baby. However, even if these allegations are true and supported by sufficient evidence, they do not rise to the requisite level of outrageous conduct under the applicable state law.

In Kentucky, a claim for the tort of outrage requires the plaintiff to prove conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Humana of Kentucky, Inc. v. Seitz*, 796 S.W. 2d 1, 3 (Ky. 1990) (citations omitted). As the Kentucky Supreme Court stated in *Kroger Co. v. Willgruber*, "citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." *Kroger*, 920 S.W. 2d at 65. Moreover, the allegedly outrageous conduct must be intended to cause emotional distress to the claimant, and the law is clear that "not every upset plaintiff can recover for emotional distress." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789 (Ky. 2004) (citing Restatement (Second) of Torts § 46(1) cmt. d (1965); *First and Farmers Bank of Somerst, Inc. v. Henderson*, 763 S.W.2d 137, 143 (Ky. Ct. App. 1988)).[6]

---

[6] The Kentucky courts have consistently limited the viability of claims for the tort of outrage to extreme and egregious circumstances. As the Kentucky Supreme Court summarized in *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789-91 (Ky. 2004),

> Kentucky courts have found plaintiffs' proof of outrageous conduct sufficient to support an outrage/IIED claim in cases where the defendants: (1) harassed the plaintiff "by keeping her under surveillance at work and home, telling her over the CB radio that he would put her husband in jail and driving so as to force her vehicle into an opposing lane of traffic"; (2) intentionally failed to warn the plaintiff for a period of five months that defendant's building, in which plaintiff was engaged in the removal of pipes and ducts, contained asbestos; (3) engaged in "a plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring [plaintiff] to his knees"; (4) committed same-sex sexual harassment in the form of "frequent incidents of lewd name calling coupled with multiple unsolicited and unwanted requests for homosexual sex"; (5) was a Catholic priest who "used his relationship [as marriage counselor for] the [plaintiff] husband and the wife to obtain a sexual affair with the wife"; (6) agreed to care for plaintiff's long-time companion-animals, two registered Appaloosa horses, and then immediately sold them for slaughter; and (7) subjected plaintiff to nearly daily racial indignities for approximately seven years.
>
> Outrageousness has been found lacking, however, in less-egregious cases where the defendant: (1) refused to pay medical expenses arising out of an injured worker's compensation claim; (2) wrongfully converted the plaintiffs property in a manner that breached the peace; (3) negligently allowed his vehicle to leave the road and struck and killed a child; (4) committed "reprehensible" fraud during divorce proceedings by converting

The Supreme Court of Kentucky addressed a case similar to the one presented here in *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1 (Ky. 1990). In *Humana*, the plaintiff was admitted to the defendant's hospital with pregnancy complications and gave birth to a stillborn fetus on the following morning. She claimed that the nurses at the hospital disconnected her intercom prior to the delivery, waited twelve to fifteen minutes before responding when her roommate called for help because the intercom was not working, told her to "shut up" after she delivered the stillborn baby because she was disturbing other patients, and, in response to the plaintiff's inquiry concerning where they were taking the fetus, told her that "we dispose of them right here at the hospital." *Humana*, 796 S.W.2d at 3. The court held that, although some of the allegations may amount to negligence and showed, at worst, "a lack of compassion and lack of taste," they were insufficient to constitute a claim for outrageous conduct. *Id.* at 3-4.

Here, the Plaintiffs' allegations do not satisfy the test articulated by the court in *Humana* and are insufficient to survive ARH's motion for judgment as a matter of law. First, as to the allegations that the nurses generated gossip concerning Amy's decision not to have a cesarean

---

funds belonging to his spouse for the benefit of defendant and his adulterous partner; (5) wrongfully terminated the plaintiff; (6) displayed a lack of compassion, patience, and taste by ordering plaintiff, who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to "shut up" and then informing her that the stillborn child would be "disposed o[f] in the hospital["]; (7) erected a billboard referencing defendant's status as a convicted child molester; 24 (8) wrongfully garnished plaintiffs wages pursuant to a forged agreement; and (9) impregnated plaintiffs wife. Courts have found other elements of the prima facie case missing, or have otherwise found recovery pursuant to § 46 unavailable, in cases where the defendant: (1) a Catholic priest, sexually abused a ten-year-old boy; (2) breached a promise to marry; (3) chained a high school student to a tree by his ankle and neck; and (4) shot and killed a beloved family pet, which had been misidentified as a stray dog.

*Stringer*, 151 S.W.3d at 789-91 (internal citations and footnotes omitted).

section, the Plaintiffs have not demonstrated that the statements were intended to cause emotional distress to the Davidsons. *See Stringer*, 151 S.W.3d at 789. The statements were not made to the Davidsons or in the presence of them, and although they may be "half-truths and bald lies," they cannot be considered malicious because no evidence has been offered that the intent of the statements was to cause emotional distress to the Davidsons.[7] Rather, according to the deposition testimony of Tiffany Holbrook, on which the Plaintiffs rely, "the nurses made the comment that it was Amy's fault that she refused the C-section and that Amy couldn't touch them." [Record No. 203, p.5] Similarly, Melissa Newall testified that the comments she heard to that effect occured months after Emma was born, when the Davidsons were no longer at the hospital.

Even if the statements were made to the Davidson's and even if the testimony in support of these allegations was not based on level upon level of inadmissible hearsay, the statements do not rise to the level of such outrageous, intolerable conduct as is necessary to support a claim for the tort of outrage. At most, these statements amount to "a lack of compassion and lack of taste" but are insufficient to support a claim for emotional distress. *See Humana*, 796 S.W.2d at 4.

Nor do the Plaintiffs' claims of failure to inform and failure to counsel demonstrate the requisite atrocity to entitled them to punitive damages. Such conduct could be considered "cold,

---

[7] KRS § 411.184 defines "malice" as "conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff or conduct that is carried out by the defendant both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm."

callous, and lacking sensitivity, but it certainly is not part of a pattern of conduct that 'is beyond all decency.'" *Id.* at 4. ARH contends that the neonatologist, Dr. Jorge Ang spoke with the Davidsons on several occasions after stabilizing Emma, and the Plaintiffs do not contest this allegation. Rather, the Plaintiffs contend that the nurses had a separate and independent duty to counsel Amy Davidson. Again, although the Court believes that the actions of the nurses may have lacked compassion and taste, their failure to inform or counsel the plaintiff does not rise to the level of "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 3 (citations omitted). Therefore, ARH's motion for summary judgment on this claim will be granted.

### D.     Plaintiffs' Motion for Partial Summary Judgment

The Plaintiffs also seek judgment as a matter of law on the issue of their comparative fault in connection with the injuries sustained by their daughter, Emma. They claim that the numerous expert opinions in the record, as well as the testimony of the nurses and Dr. Elizabeth Chase, demonstrate that Amy did not have knowledge of the fetal distress and, therefore, offer no criticism of her choice to refuse the cesarean section at 12:10 a.m. They further contend that no expert has or will state that a cesarean section at that time could have made any difference in the injuries sustained by Emma. [*See* Record No. 198, p. 8-11] Both ARH and the United States dispute these contentions and claim that Emma's injuries could have been lessened if Amy had allowed the cesarean section because the injury sustained to Emma's brain "proceeded on an exponential curve" and "would have been lessened is a C-section had been performed at any time

prior to her birth at 12:21 on October 14, 2003." [Record No. 223, p.1-2] The Defendants have submitted the deposition testimony of Dr. Alan Hill and Dr. Gregory Barnes in support of this contention. [Record No. 223, Att. 1 and 2]

In 1988, the Kentucky legislature adopted the doctrine of comparative fault through section 411.182 of the Kentucky Revised Statutes. That sections provides that, in all tort actions, the court shall make findings indicating "[t]he percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability." KRS § 411.182 (2007). Accordingly, a plaintiff's contributory fault is no longer an absolute bar to recovery, but rather reduces any damage award in relation to his or her percentage of fault. Of course, fault may not be apportioned to a party against whom the evidence is insufficient to prove liability. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 826 (6th Cir. 2000) (holding that "[u]nder section 411.182 a district court errs to the extent that it instructs a jury to apportion liability to parties where the evidence adduced at trial is insufficient as a matter of law to support a finding of liability against those parties").

As noted previously, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker*, 879 F.2d at 1310 (quoting *Anderson*, 477 U.S. at 251-52). Additionally, the party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *Keeneland*, 830 F. Supp. at 983.

Here, although the Plaintiffs have presented an abundance of evidence demonstrating that Amy Davidson was not at fault regarding the injuries sustained to Emma, the Defendants have presented at least some probative evidence indicating that a genuine issue of material fact exists as to whether her refusal of the cesarean section at 12:10 a.m. resulted in additional injuries to Emma. Although the Plaintiffs argued strenuously concerning the issue in their initial memorandum, they have not filed a reply to contest the evidence put forth in the Defendants' response. The Defendants indicate that two expert witness will testify that the severity of the injury sustained by an infant's brain during fetal distress proceeds on an exponential level, not a straight line, indicating that every moment (including the last 11 minutes between Dr. Chase's offer of a cesarean section and the delivery) contributed to Emma's injuries. Accordingly, because the evidence must be viewed in the light most favorable to the non-moving party and because the Defendants have presented probative evidence that a genuine issue of material fact exists as to Amy's comparative fault, the Plaintiffs' motion for partial summary judgment on this issue will be denied.

### III.     Conclusion

For the reasons discussed herein, it is hereby

**ORDERED** as follows:

1.     Defendant ARH's Motion to Limit Damages [Record No. 202] is **DENIED**.

2.     Defendant United States' Motion for Partial Summary Judgment [Record No. 199] is **GRANTED** with respect to Plaintiff Johnnie Davidson's claim for loss of consortium and with respect to the limitation of Plaintiffs Amy and Johnnie Davidson's claims for damages

against the United States for loss of services of their daughter, Emma. The motion is **DENIED** as to all other issues.

       3.       Defendant ARH's Motion to Dismiss the Parents' Claim for Loss of Services [Record No. 201] is **DENIED**.

       4.       Defendant ARH's Motion for Partial Summary Judgment [Record No. 203] is **GRANTED**.

       5.       The Plaintiffs' Motion for Partial Summary Judgment on the Issue of the Plaintiffs' Comparative Fault [Record No. 198] is **DENIED**.

This 19th day of October, 2007.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge