UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| JOHNNIE DAVIDSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 7: 06-129-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | **MEMORANDUM OPINION** |
| DEPARTMENT OF HEALTH AND | ) | **AND ORDER** |
| HUMAN SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the United States' motion to exclude at trial any evidence relating to the Institutes for the Achievement of Human Potential in Philadelphia Pennsylvania (the "Institute"). [Record No. 228] The United States contends that the Plaintiffs' life care plan for Emma Davidson relies on the Institute's programs and services and is unsupported by medical evidence. The United States also argues that the expert testimony of Dr. Mark Bucksaum, Myron Smith, and Lawrence Copp must be excluded because their recommendations are based on the Institute's programs and services.

In response, the Plaintiffs appear to concede that the Institute's programs and plans for Emma could not survive a *Daubert* challenge and thus will not be used at trial. [*See* Record No. 253, p. 1,5][1] The Plaintiffs further assert that all of their experts' testimony is not based on the

---

[1]   In their the response, the Plaintiffs indicate that "whether or not the Philadelphia Institute provides a viable program for children like Emma is not at issue in this case, and Plaintiffs choose to avoid the

Institute's recommendations and is supported by facts and evidence reasonably relied upon by experts in their respective fields. In particular, the Plaintiffs point to the deposition testimony of their experts, the lack of any mention of the Institute in the proposed life care plan, and a supplemental affidavit submitted by Dr. Bucksbaum stating that his expert testimony and the life care plan are not based on the Institute's recommendations.[2]

---

irrelevant debate." [Record No. 253, p. 5]

[2]   In its Reply brief, the United States contends that the Court is prohibited from considering the affidavit of Dr. Bucksbaum because it contradicts his and Mr. Smith's depositions, citing *Aerel S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006). However, the Sixth Circuit's decision in *Aerel* is inapplicable to the situation currently before the Court because there is no summary judgment motion pending and because it is clear that Dr. Bucksbaum's supplemental affidavit does not directly contradict his deposition testimony. In *Aerel*, the Sixth Circuit held that,

> a district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue.

*Aerel*, 448 F.3d at 908-909 (internal citations and quotation marks omitted). Under this standard, even if the Court were to apply the rule on affidavits to the United States' motion in limine, it is clear that Dr. Bucksbaum's affidavit should not be excluded because it does not directly contradict his earlier testimony.

In his deposition, Dr. Bucksbaum testified that he recommended that Emma continue to be treated by the Institute because they had already developed a treating relationship. Dr. Bucksbaum admitted that the Institute's programs and services did not rise to the level of a peer reviewed, accepted medical approach, but asserted that his recommendations for neural stimulation are accepted and supported. Finally Bucksbaum testified that,

> [w]hether or not it's - the recipe is from a French Chef or Chinese or Italian, you know, it's not really as important as the fact is is [sic] that the concept of neural stimulation for the child is valid, is published, is on the CDC website as an acceptable form of treatment. Who specifically delivers the treatment, you know, we can debate that for a long time but - but do understand that neural stimulation is viable and valuable.

[Record No. 233, Att. 11, Dep. of Mark Bucksbaum, p.2] Dr. Buckbaum's deposition testimony cannot be considered "directly contradictory" to his supplemental affidavit, which states, in relevant part,

-2-

I.      **Background**

As the Court noted in its previous orders, it is undisputed that Emma Davidson suffered permanent, severe brain damage in connection with her birth in October 2003. In their pre-trial filings, the Plaintiffs have indicated that they intend to introduce a life care plan to assist the Court in assessing any potential damage awards against the Defendants. Initially, this life care plan incorporated the programs and recommendations of the Institute, including expenses for travel to and from the Institute and the Institute's tuition and services. [Record No. 233 Att. 9, Dep. of Myron Smith, p.4-5] However, after the Plaintiffs' experts became aware of the Defendants' concern about and the controversial nature of the Institute's programs, they removed these items and substituted local, community-based costs for items such as speech therapy, occupational therapy, and physical therapy. [*Id.* at 4]

---

> During my interview with the Davidsons, I learned that Amy Davidson and Johnnie Davidson had been providing physical exercises and mental stimulation to Emma Davidson in their home, in accordance with a program of the Philadelphia Institute for the Achievement of Human Potential. The exercises they described encompassed most of the typical physical therapy and occupational therapy routinely provided to children suffering from cerebral palsy, with additional patterning exercises aimed at providing neural stimulation. Neurosensory stimulation will likely be included in any pediatric rehabilitation program Emma attends.
>
> The Life Care Plain provisions I approved for Emma are not based on the Philadelphia Institute's modalities.
>
> In my experience, the Life Care Plan provided for Emma Davidson includes the items normally included in Life Care Plans for catastrophically brain injured children which have proven to be effective, beneficial and medically necessary in treating cerebal palsy patients and in preventing further deterioration. To my knowledge, no items in the Life Care Plan for Emma Davidson make provision for any professional assistance or equipment to be used for patterning exercises.

[Record No. 253, Att. 3, Aff. of Mark Bucksbaum] Accordingly, because the affidavit is not directly contradictory, and because the Court finds no evidence of sham or bad faith, it will consider the affidavit of Dr. Bucksbaum in making its determination on the United States' motion.

The United States contends that, despite these changes to the plan, the updated life care plan is still based on the Institute's programs, treatment methods and speculative future benefits to Emma Davidson. They direct the Court's attention to the testimony of Myron Smith (the Plaintiffs' expert life care planner), which provides:

> Q. Why did you take out the intensive patient training and Emma's treatment out of the updated life care plan?
>
> A. Well, a lot – a lot of the – the – we try – we tried to make it a more community-based program. She received OT, she receives PT, she receives some neuropscholigical services, she receives some pediatric services there. I believe in Philadelphia they take a look – I believe there's an orthopedist on staff and they take a look at – at her on a periodic basis and then develop this – this extensive plan. Well, we – we tried to replicate those services more community based so there are – there is OT, there is PT, there is – there are physicians, but they are – they are community based, and there was so much initial concern about the nature of the program that we said, well, okay. You know, that's – that program isn't the tail that's wagging the dog. . . . So we just – we just felt that rather than that being the tail that wags the dog, we would delete that part of it but the replication can occur in the – in the – in the community.

[Record No. 233, Att 9, p.4] Additionally, the United States has attached excerpts from the depositions of Dr. Bucksbaum and Mr. Lopp, which refer to the Institute and rely on Mr. Smith's proposed life care plan, respectively.

**II.   Analysis**

Federal Rules of Evidence 702 and 104(a) govern the admissibility of expert testimony and "require that the trial judge 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).

In performing this function, the trial judge must act as a "gatekeeper," and this "obligation applies to all expert testimony." *Id*.

Under Rule 702, an expert witness can testify regarding scientific, technical, or other specialized knowledge if it will assist the trier of fact in understanding the evidence or determining issues of fact. Fed. R. Evid. 702. "This question of relevance, described as 'fit,' 'is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes.'" *Nelson*, 243 F.3d at 250. (quoting *Daubert*, 509 U.S. at 591). Accordingly, in determining whether expert testimony is relevant and reliable, the court must assess whether the expert

> is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592-93 (footnote omitted).

The party seeking to have the expert testimony admitted bears the burden of demonstrating its admissibility by a preponderance of proof. *Nelson*, 243 F.3d at 251. The proponent must show "that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology; the expert's bald assurance of validity is not enough." *Smelser v. Norfolk S. Ry.*, 105 F.3d 299, 303 (6th Cir. 1997) (citations omitted).

In the present case, the Plaintiffs must show that the proffered expert testimony of Dr. Bucksbaum, Mr. Smith, and Mr. Copp are based on "sound science," that is, that the reasoning

or methodology underlying the testimony is scientifically valid. *Id*; *see also Daubert*, 509 U.S. at 592-93. The Plaintiffs have failed to meet this burden with respect to the testimony of Mr. Smith and Mr. Copp. Regarding Mr. Smith's testimony, the Plaintiffs repeatedly assert that "Mr. Smith has not based his recommendation for Emma's future are needs on the recommendation, or programs, of the Institute." [Record No. 253, p. 3] They further state that "whether or not the Philadelphia Institute provides a viable program for children like Emma is not at issue in this case, and Plaintiffs choose to avoid the irrelevant debate." [Record No. 253, p. 5]

However, Mr. Smith clearly stated in his deposition that he attempted to "replicate" the Institute's services with a more community based plan. [Record No. 233, Att. 9, p.4] And the Plaintiffs have failed to point to any other, legitimate basis to support Mr. Smith's life care plan and recommendations. Although numerous deposition transcripts are in the record currently before the Court, the parties have only provided excerpts of Mr. Smith's testimony, and the excerpts submitted by the Plaintiffs do not establish that his testimony is based on sound science. Rather, Mr. Smith testified that the recommendations related to the life care plan merely "replicate" the Institute's programs and services, and the Plaintiffs have failed to provide any other basis to demonstrate that his reasoning and methodology are based on valid science. Therefore, his testimony and the life care plan must be excluded.[3]

---

[3] The Court's determination on this issue is not altered by the supplemental affidavit of Dr. Bucksbaum, as Dr. Bucksbaum only asserted that the life care plan provisions he approved for Emma are not based on the Institute's programs. Although Dr. Bucksbaum further asserted that, in his experience, "the Life Care Plan provided for Emma Davidson includes the items normally included in Life Care Plans for catastrophically brain injured children which have proven to be effective, beneficial and medically necessary in treating cerebal palsy patients and in preventing further deterioration," this statement cannot cure Mr. Smith's clear assertion that the life care plan replicates the Institute's programs and services. And because

Likewise, with respect to the testimony and economic analysis of Lawrence Copp, it is clear that his opinion and data are based purely on the life care plan and recommendations of Mr. Smith. [*See* Record No. 233, Att. 10, Dep. of Lawrence Copp, p.2-3] Again, the Plaintiffs have failed to offer any evidence that the reasoning and methodology of Mr. Copp's opinion is scientifically valid or based on anything other than Mr. Smith's recommendations. Accordingly, because Mr. Smith's life care plan is inadmissible and because Mr. Copp's testimony is based purely on Mr. Smith's recommendations, Mr. Copp's testimony cannot satisfy the requirements of the Federal Rules of Evidence[4] or the standard articulated by the Supreme Court in *Daubert*. Therefore, his testimony must also be excluded.

However, the Court finds that Dr. Bucksbaum's testimony and expert opinion are admissible, as Dr. Bucksbaum clearly testified and stated in his affidavit that his opinions regarding neural stimulation are the product of scientifically valid reasoning and methodology. In his deposition, Dr. Bucksbaum testified that "the concept of neural stimulation for the child is valid, is published, is on the CDC website as an acceptable form of treatment." [Record No. 233, Att. 11, Dep. of Mark Bucksbaum, p.2] Similarly, in his affidavit, Dr. Bucksbaum clearly stated that "[t]he life care provision I approved for Emma Davidson are not based on the Philadelphia Institute's modalities." [Record No. 253, Att.3, p.2] Therefore, Dr. Bucksbaum's

---

the Plaintiffs have failed to offer any other sound science to support Mr. Smith's provisions of the life care plan, Mr. Smith's testimony and the life care plan must be excluded.

[4]  The Court notes that expert testimony may be admissible if it relies on inadmissible facts or data of a type that is reasonably relied on by experts in their particular field. *See* Fed. R. Evid 703. However, in the present case, it is clear that the Institute's recommendations are not the type of facts or data reasonably relied on in the medical field, and because Mr. Copp's testimony is based purely on the inadmissible life care plan of Mr. Smith, which merely "replicates" the Institute's recommendations, Mr. Copp's testimony must be excluded.

testimony will not be excluded. However, because the Plaintiffs assert that they are not attempting to establish the validity of the Institute's programs or services or admit any testimony or evidence relative to the Institute, Dr. Bucksbaum, will be prohibited from making any references to the Institute or its programs and recommendations for Emma Davidson.

### III.     Conclusion

It is hereby **ORDERED** that the United States' motion in limine [Record No. 228] is **GRANTED** with respect to the Plaintiffs' Life Care Plan and the expert testimony of Mr. Smith and Mr. Lopp. Those items will be excluded from consideration in the trial of this matter. However, the motion is **DENIED** with respect to Dr. Bucksbaum's testimony.

This 2nd day of November, 2007.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge